### T. W. Woodward v. Fort Worth & Denver City Railway Company.

#### Decided February 27, 1904.

**Lease—Parol Reservation—Holding Over.**

Plaintiff verbally leased from a railroad local agent a part of the right of way for placing a coal bin thereon. After he had taken possession, the agent came to him with a written lease, executed by the general superintendent, containing a clause exempting the road from liability for injury to the lessee's property caused by fire. Plaintiff signed the lease, stipulating verbally that he did not assent to the exemption clause. The agent had no authority to make the verbal lease. The coal bin was destroyed by fire caused by sparks from an engine, after the expiration of the lease. Held, that plaintiff's verbal reservation from the written lease of the exempting clause was ineffectual; that his holding over after the lease had expired would be presumed to be under the terms of the written lease, and that a judgment denying him recovery for the property so destroyed was correct.

Appeal from the District Court of Hall. Tried below before Hon. Sterling P. Huff.

*W. M. Pardue, J. K. Duke,* and *G. A. Brown,* for appellant.

*Stanley, Spoonts & Thompson,* for appellee.

CONNER, Chief Justice.—Appellant was the owner of about 108 tons of coal of the value of $620, and of the coal house containing the same situated upon appellee's right of way in Memphis, Hall County, Texas. Said coal and house were destroyed by fire alleged to have been negligently set out by the appellee's servants, and there was evidence tending to support this allegation.

The only defense that we consider necessary to notice was that appellant's occupancy of the premises was by virtue of a written lease in which it was specially stipulated and agreed that appellee should "not be held liable for any loss or damage by fire to appellant's said property communicated by sparks from appellee's locomotives or otherwise."

The two stubbornly contested issues were, (1) whether the fire resulting in the loss charged was set out or negligently permitted to escape from a passing locomotive; and (2) whether appellant's occupancy of the right of way alongside the extending tracks was under the written lease containing the stipulation pleaded in defense; or under verbal lease contract made by appellee's station agent without any such stipulation. On this appeal from the verdict and judgment against him, appellant presents some twenty assignments of error, but our principal difficulty has been to carefully consider the evidence and determine whether the verdict and judgment on the issues indicated are sufficiently supported. We have concluded that they are.

As already indicated, we agree with appellant that the evidence tended to show that the fire was negligently set out by the operatives of one of appellee's locomotives, but we can not say that it conclusively so ap-

pears. But if so, we feel unable to say that the evidence fails to support appellee's said special defense. It is undisputed that the property in question was situated upon appellee's right of way, and that appellant in fact signed a written lease with stipulation as pleaded; but he insists, as he in substance testified, that he entered upon the right of way and constructed his coal house and placed coal therein prior to signing the written lease, by virtue of verbal agreement with Mr. Moores, appellee's local agent, and "that nothing whatever was said at the time or at any other time between him (appellant) and Mr. Moores about the defendant railway company being exempted from liability for fire in case his building or coal should be damaged or burned." Appellant testified that he applied to Mr. Moores for the lease in October, 1899, and that "A. G. Moores told him (appellant) he would take my application and send it to the company, and asked permission for him to do so;" that a short time afterwards Mr. Moores told appellant that he "could have the land and that the company's terms were $1 a year in advance, and that the term would run from the 1st day of January, 1899, and expire the 31st of December of that year." That these terms were agreed to by him, and the agent Moores went and showed him the ground on which to construct his coal bin, and that nothing was then said, as above quoted, releasing appellee from negligence. That the coal bin was completed and coal placed therein about the 27th or 28th of December, 1899; that "some time during the month of January, after my return from Colorado, A. G. Moores, defendant's agent at Memphis, came to me with a written or printed lease contract and requested me to sign the same; it was made out in duplicate; I read it over and stated to Moores that it did not contain the contract, and objected to it because of the clause therein contained exempting the company from liability for damage or loss occasioned by fire, and stated to the defendant's agent that said contract was out of date; that the term for which it was made had already expired, but defendant's agent and I discussed the matter and it was understood between us that for me to sign it then would not affect my occupancy of the right of way after that time, and I told Mr. Moores that I would not sign a contract exempting the company from liability after that time, and that I would get off the right of way before I would do so. Mr. Moores requested me to sign this contract so that he could collect his $1 rent, and I accordingly did so and paid Mr. Moores $1."

Appellant further testified that the fire occurred on the night of February 27, 1900, and that no written contract of lease, other than the one mentioned, had ever been signed by him. The testimony on behalf of the appellee, however, to the effect that A. G. Moores was without authority to make a verbal lease of any part of appellee's right of way, seems undisputed, and Moores testified, among other things, to the effect that when appellant applied to him for a lease he was told

that he (Moores) "would have to send his application to defendant's general superintendent at Fort Worth," who "would prepare lease and send to be signed, which I did about November 1, 1899. * * * That Mr. Goode (defendant's superintendent) made out and sent to me about the middle of November, 1899, duplicate contracts of lease, one of which was to be kept by Mr. Woodward and the other returned to Mr. Goode. Mr. Woodward signed both contracts, kept one of them, paid me $1, and I returned the lease to Mr. Goode, and sent the one dollar to the treasurer of defendant at Fort Worth. * * * The lease shown me by defendant's attorneys and read in evidence is the lease signed by Mr. Woodward and returned to Mr. Goode. It has a date, December 22, 1899, opposite my name where I signed as witness of Mr. Woodward's signature." Witness stated that his best recollection was that the lease was signed upon that date, and the records in his office also showed that to be the date of his remittance of the $1 lease money paid by appellant. Moores further testified that "Mr. Woodward made no objection to signing the lease, nor to the clause exempting the defendant from liability for damage caused by fire. The lease was in the usual form of leases used by defendant and furnished me for signature of persons desiring to lease the right of way. I made no parol agreement or contract with Mr. Woodward for lease of defendant's right of way, as I had no power or authority from anyone to bind defendant by any such contract, and I never offered or attempted to do so. * * * I am sure that Mr. Woodward at the time he signed said lease said nothing whatever about the lease having expired, or that he could hold under any contract not in writing."

J. V. Goode testified in behalf of the appellee, that at the time in question he was employed in the capacity of its general superintendent; that about the middle of November, 1899, a written lease was prepared and forwarded for appellant's signature, which was returned signed. That he could not give the date exactly; "but I can say positively that this lease was executed by Mr. Woodward some time in December, 1899, and another lease was, I think, executed by him for the year 1900, some time between the 1st and 15th of January, 1900, but I can't say positively." He further testified that Mr. Moores was without authority to make a verbal lease, and that all leases executed by the company were written and contained the exemption pleaded in this cause, and that Moores "had no authority to waive or relax the rule, and was never given authority to do so."

It will be thus seen that if the written lease under consideration be treated as one that lost force and vitality December 31, 1899, as is contended by appellant, nevertheless there is evidence that undoubtedly tends to show that it was executed by appellant prior to its expiration and became effective, unless, as appellant insists, he could limit its effect by a reservation therefrom of the clause limiting appellee's liability, which we hardly think can be seriously contended by anyone.

If the written lease, therefore, became effective, and none was thereafter executed, the holding over by appellant must be deemed to have been upon the terms of his prior lease, upon the ground that the parties are presumed to have tacitly renewed the former agreement. See Roller v. Zundelewitz, 32 Texas Civ. App., 165, 73 S. W. Rep., 1071, and authorities therein cited. In addition to which the testimony of J. V. Goode, above quoted, should perhaps be construed as tending to show also that appellant in fact in January, 1900, and prior to the fire, had renewed his lease by the execution of a new lease upon the same terms as the original. If, therefore, appellant's occupancy of appellee's right of way at the time of the fire was under lease with limitation of appellee's liability as pleaded, no recovery for appellant's loss can be maintained, even though the proximate cause of such loss may have been negligence on appellee's part. See Carter v. Railway Co., 95 Texas, 477; Insurance Co. v. Railway Co., 175 U. S., 91; Railway Co. v. Ordelheide, 72 S. W. Rep., 684.

We conclude that the views so expressed are decisive of the material questions presented in this case, we not having found reversible error as assigned in the introduction or rejection of evidence, or in charges given or refused, that relate to the issues mentioned, nor in misconduct or irregularity on the part of the jury that would authorize us to disturb their verdict. All assignments are accordingly overruled, and the judgment affirmed.

*Affirmed.*