First National Bank of Wortham v. C. H. Quinby et al.

Decided October 22, 1910.

**1.—Banks and Banking—Collection of Drafts—Liability.**

A bank receiving a draft for collection at a distant point is responsible, in the absence of instructions from the depositor to send the draft to some particular bank at the place of payment, for all subsequent agents employed in the collection.  The bank receiving the draft for collection, nothing further appearing, will be treated as an independent contractor, and the subsequent agents at its own and not the subagents of the depositor.  But if the initial bank is caused or induced by the depositor to change its course of business and to send the draft to a particular agent or bank for collection, and the money is thereby lost, the depositor must bear the loss.

**2.—Same.**

In a suit by a bank against a depositor for the amount of a draft which was delivered by the depositor to the bank for collection, and the amount of which was at the same time placed to the credit of the depositor but was lost by reason of the failure of the bank on which it was drawn, evidence considered and held to raise an issue of fact for the jury, whether or not the initial bank was induced by the depositor to send the draft to the particular bank whose failure caused the loss.

Appeal from the District Court of Freestone County.  Tried below before Hon. H. B. Daviss.

*W. J. Bryant* and *Williams & Bradley,* for appellant.

*Simkins & Simkins, El. J. Gibson* and *L. R. Callaway,* for appellees.— An act or declaration of opinion or hearsay consistent with good faith, the injurious result of which could not have been foreseen or anticipated by any ordinary forecast of mind, will not operate as an estoppel al-

though injury may result therefrom. Hefner v. Vandolah, 11 Am. Rep., 39; Scoby v. Sweatt, 28 Texas, 731.

None of the elements of estoppel, legal or equitable, were present in this case. Nourse v. Nourse, 116 Mass., 101; Turner v. Ferguson, 58 Texas, 6; Scoby v. Sweatt, 28 Texas, 731; McLaren v. Jones, 89 Texas, 134; Salinas v. Stillman, 25 Texas, 12; Fielding v. DuBose, 63 Texas, 636; Cotton St. Bldg. Co. v. Jones, 94 Texas, 497; Anderson v. Walker, 93 Texas, 126; Gulf, C. & S. F. Ry. v. Gordon, 70 Texas, 80; Wortham v. Thompson, 81 Texas, 348; Burleson v. Burleson, 28 Texas, 383; Kinney v. Farnsworth, 17 Conn., 355; Hammerslough v. Kansas City, etc., 79 Mo., 80; Coffelt v. First Nat. Bank, 52 Kan., 600; Van Bibber v. Beirne, 6 W. Va., 168.

When, in the absence of a special agreement, a local bank receives paper to be collected on a distant point where it has no agent or regular correspondent, and transmits the same to another bank at such point for collection and return of the proceeds, and such bank having made the collection, becomes insolvent, and fails to remit the collection, the first bank is liable to the depositor. Schumacher v. Trent, 44 S. W., 461; Pacific Express Co. v. Critzer, 42 S. W., 1017; Commercial Bank v. Jones, 18 Texas, 820; Kansas Bank v. Bank of St. Louis, 52 S. W., 265.

Where a draft is received by a bank for the purpose of collection and it transmits it to another bank for collection, the first bank is liable for the default of the second bank, where the first bank has been negligent in not procuring the transmission of the collection to it before the second bank's failure. Schumacher v. Trent, 44 S. W., 460; Bailie v. Augusta Savings Bank, 51 Am. St. Rep., 74; note to Isham v. Post, 38 Am. St. Rep., 777; Minneapolis, etc., v. Metropolitan Bank, 77 Am. St. Rep., 611, see notes to this case.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by the appellant against the appellees Quinby, Jones and Bounds, partners and grain dealers, to recover the sum of $649.10. The suit is in the usual form of an action upon an open account, the amount sought to be recovered being the aggregate sum of two drafts alleged by the plaintiff to have been given it by defendants for collection, for which they received credit as depositors of the plaintiff bank, neither of which drafts were ever collected, but the amounts thereof lost to the parties.

The defendants, after a general denial, answered that in the fall of 1907 appellees were engaged in selling and shipping corn in carload lots; that in December they sold Crutcher & Son, of Tyler, two cars of corn for $403.20, and took a bill of lading from the carrier and delivered it to appellant and attached a draft to same for said amount and directed appellant to collect the same; that appellant sent said draft through Harris Exchange Bank of Tyler and upon its own responsibility accepted of said bank exchange after surrendering the bill of lading; that soon thereafter appellant notified appellees that it had collected said draft; that at said time a money panic prevailed throughout

the country, and on account thereof appellees were withholding other shipments from Crutcher & Son until said draft was paid; that appellees then shipped said Crutcher & Son in December, 1907, another load of corn, and drew upon them for $280 and placed said draft, with like bill of lading attached, with appellant for collection, and that said draft with bill of lading was also sent to Harris Exchange Bank and the bill of lading was by it delivered, and the draft not paid, but was lost; that appellant surrendered said drafts and bills of lading (acting through said Harris Exchange Bank) and, having given appellees credit on their passbook, became liable to them for the amounts thereof; that Harris Exchange Bank was appellant's agent and not appellees', and hence appellant should sustain the loss caused by its negligence; that appellant, on account of the money stringency, "entered into a special agreement and understanding with defendants, whereby plaintiff agreed to make collections for said shipments of corn and to accept bank exchange in lieu of cash and to deposit to the credit of defendants as cash upon its books the amount of exchange received."

Appellant replied by supplemental petition that prior to the date of the transactions involved in this suit appellees had sold and made shipments to Tyler, in which drafts against the purchasers were attached to bills of lading and endorsed and delivered to appellant; that it had sent said drafts and bills of lading to its agent, and same had been paid; that after this course of business had been established, appellees came to appellant and advised it that they had just been advised by their customer at Tyler that if appellees would cause such drafts and bills of lading to be sent to a certain bank in Tyler, whose name they were then unable to recall, that such course would greatly accommodate such customer; that appellant looked into a bank directory in which the names of the banks of Tyler were given, and appellees advised it that it was Harris Exchange Bank to which the customer referred, and advised appellant that it would greatly accommodate their customer if the drafts were sent to said Harris Exchange Bank; that Harris Exchange Bank was another bank from that to which appellant had previously caused the drafts to be sent; that appellees' said statements to appellant were reasonably calculated to and did cause appellant to understand that appellees desired such drafts and bills of lading to be sent to Harris Exchange Bank and appellant accordingly so sent them to it; that appellant required appellees to endorse said drafts and bills of lading and it relied upon said endorsements and their responsibility as protection to it against loss; that following its course of business, it credited appellees with each of said drafts, and when they were returned, it charged them back against appellees' account; that after the first shipment in question, Harris Exchange Bank remitted to appellant a draft on some bank, representing the amount of said draft; that appellant immediately upon receipt of same exhibited it to appellees and advised them what had been done; that thereafter appellees delivered the second draft and bill of lading to appellant, and following said direction of appellees it likewise sent said

draft to Harris Exchange Bank, and before the exchange representing the first shipment in question was paid and before the draft representing the second shipment was paid, Harris Exchange Bank failed and said drafts were never paid; that Harris Exchange Bank was the agent of appellees, of their own selection, and not the agent of appellant; that appellant would not have sent said drafts to Harris Exchange Bank but for said direction of appellees.

Upon a trial before the court and a jury, judgment was rendered for appellees, and the appellant appealed.

T. B. Poindexter, cashier of the bank, testified, in substance, that defendants had shipped corn to Crutcher & Son before the shipments involved in this suit were made; that in the previous transactions the defendants deposited the bills of lading with drafts attached with the bank for collection; that said drafts and bills of lading were sent to its correspondents and collected; that the Harris Exchange Bank was not a correspondent of the plaintiff. He further said: "The defendant brought the bills of lading for the first two cars in dispute here, with the draft attached, to the bank just the same as they had the former ones. I think the drafts were payable to the First National Bank of Wortham. The bills of lading were endorsed by the defendants. We had sent the other draft to Tyler through a different channel, and Mr. Quinby came into the bank with the draft and bills of lading for the first two cars in controversy and said he had just had a conversation with Crutcher, and he said that Crutcher was doing business there with a bank other than the one to which we had sent the draft, and he said that Crutcher said he would like for the drafts to be sent to the other bank. Mr. Quinby had forgotten the name of the bank, so we looked in a bank directory and decided that it was Harris Exchange Bank. He said he had forgotten the name of the bank, but it was a bank with 'exchange' in the name. I don't remember whether he said it was Harris & Raymond Bank or not. It was agreed by us that it was Harris Exchange Bank, because there was no other bank there with a name anything like that. He did not make any protest against the Harris Exchange Bank, or say it was not the one. I then sent the draft for the two cars of corn to the Harris Exchange Bank. After I sent it . . . I came down town . . . and met Mr. Quinby on the way to the postoffice and he asked me if I had heard from the bank and I told him no. We went to the postoffice and I got the letter from the Harris Exchange Bank with a draft covering the two cars of corn. . . . I showed Mr. Quinby the draft and he then went to the oil mill and got the bill of lading and draft for the other car and gave it to me; and I went over to the bank on Sunday evening and fixed it up and sent it off Sunday evening. I sent the draft for the two cars to the Seaboard National Bank of New York. We never did get any money on either one. The draft that went to New York was protested. There was not anything outside of Crutcher's conversation with Quinby, which he, Quinby, repeated to me, that caused me to change my method of

doing business. The conversation I had with Quinby when he delivered me the two bills of lading with draft attached, in which he repeated the conversation he had just had with Crutcher over the telephone, was the cause of my changing and sending the draft direct to the Harris Exchange Bank instead of sending it the way I did before. I sent both drafts to the Harris Exchange Bank, with the bills of lading attached. The bank of Tyler made a remittance on the first two bills of lading on a bank in St. Louis; the last draft was not paid. No, I never did recover these bills of lading and drafts, I don't know what became of them. I sent them to the Harris Exchange Bank and I don't know what they did with them. They sent me a draft on a St. Louis bank for the first two bills of lading I sent them. That was finally rejected by our New York correspondent. I did not get anything out of the last draft. I sent it to the Harris Exchange Bank and they simply kept it. I don't remember whether it was on the 13th of December, 1907, that Mr. Quinby brought the bills of lading for the first two cars of corn to the bank or not. Anyway, he came to the bank with the bills of lading and said he had just had a conversation with Crutcher and that Crutcher would like for us to send the draft to a bank the name of which he could not then remember, and he and my brother finally agreed that it was Harris Exchange Bank. I acted upon that instruction and sent the draft to that bank. I do not say that Quinby selected that bank as his agent. He just delivered me a message which he had received over the 'phone from Crutcher. He came to the bank with the bills of lading and said he had just had a talk with Crutcher, and he told us what Crutcher had said, and said he would be glad for it to go that way. I understood the request to come from Quinby. I thought it was an accommodation to Mr. Quinby. It is a fact that I told Longbottom that I did not consider I had a positive instruction from Quinby to send the draft to the Harris Exchange Bank."

C. H. Quinby, one of the appellees, testified that he told Poindexter, appellant's cashier, about the 10th of December, that he had called Crutcher & Son up by 'phone and sold them two cars of corn, and that in that conversation Crutcher told him there would be no delay in the payment of the draft if I would tell my banker to draw his drafts through the Harris & Raymond Bank; that the reason the other draft on the first car was not paid promptly was because the bank in Wortham had drawn the draft on a bank in Tyler that he did not deal with. And he said, "If you will draw through the Harris & Raymond Bank there will be no delay and it would be an accommodation to us." And he says, "You can tell your banker that the draft will be paid if he draws on any bank in Tyler." He further testified: "I did not say the Harris Exchange Bank was the one I was talking about. When I told him it was Harris & Raymond Bank, R. G. Poindexter turned around and got a book and laid it down on the table and kept turning through it until he come to Tyler, and he looked and said, 'I don't see any Harris & Raymond

Bank there.' And then he looked again and said, 'It is Harris Exchange Bank.' And I said, 'He said Harris & Raymond Bank.' And he said, 'I know that it is Harris Exchange Bank because there is no Harris & Raymond Bank there.' He said it was bound. to be Harris Exchange Bank."

The first assignment of error complains of the court's refusal to give to the jury a peremptory instruction to return a verdict in favor of appellant for the amount sued for. The proposition of law contended for by appellant is that "where a depositor of drafts with bills of lading attached had previously made like deposits which were sent by the initial bank to its correspondent and tardily paid, and the depositor on the occasion in question, when making the deposit, called attention to the tardiness of previous payments and said that he had just talked to his customer who said it would expedite payments and accommodate him (the customer) if these drafts were sent to a certain other bank, and the initial bank was thereby induced to so send them, and the proceeds of the drafts were thereby lost, the depositor and not the initial bank should sustain the loss." We are inclined to think that this is substantially a correct statement of the law. The general rule, however, in the State of New York, and which has been adopted by the Supreme Court of the United States and followed by at least two of the Courts of Civil Appeals in this State, is that a bank receiving a check or draft for collection at a distant point is responsible, in the absence of instruction from the depositor to send the draft to some particular bank at the place of payment, for all subsequent agents employed in the collection; that the bank receiving the draft for collection, *nothing further appearing,* will be treated "as an independent contractor, and the subsequent agents as its own and not the sub-agents of the owner." State Nat. Bank of Ft. Worth v. Thomas Mfg. Co., 17 Texas Civ. App., 214 (42 S. W., 1016); Schumacher v. Trent, 18 Texas Civ. App., 17 (44 S. W., 460); Exchange Nat. Bank of Pittsburgh v. Third Nat. Bank of N. Y., 112 U. S., 276.

But if, as contended by appellant, the conversation had by the appellee Quinby with the cashier of appellant at the time or shortly before the delivery of the drafts in question to appellant for collection, was such as to cause the cashier to understand that it was the desire of appellees that said drafts should be collected through the Harris Exchange Bank, and although the statements made by Quinby in said conversation did not amount to a positive direction or express instruction to send the drafts to said Harris Exchange Bank, if they were calculated to and did cause the appellant to change its course of business from the bank it had previously used in making collections to the Harris Exchange Bank, appellees would be estopped by such conduct to deny that the sub-agent was their agent and would be compelled to bear the loss sustained by reason of the selection of such agent.

We are of opinion, however, that the peremptory instruction requested by the appellant was properly refused under the facts of this case.

Whether the conduct of the appellees relied on by the appellant was calculated to and did cause appellant to send the drafts involved in this suit to the Harris Exchange Bank, was an issuable fact to be determined by the jury under appropriate instruction. The court, however, refused a special instruction requested by the appellant submitting this issue, and, on the contrary, at the instance of the appellees charged that the burden of proof was on the plaintiff to show a special or express agreement between it and the defendants, whereby it became the duty of plaintiff at the instance of defendants, to send the drafts in question to the Harris Exchange Bank at Tyler, Texas, for collection, and that unless such proof had been made, to return a verdict for defendants. This charge did not correctly express the law under the facts of this case as we conceive it to be, and should not have been given.

Appellees contend, in effect, that the evidence shows without dispute that appellant, for the purpose of obtaining their business and in consideration of the profits expected from said business, entered into a special agreement with appellees whereby it agreed to make collections for the shipments of corn involved in this suit and to accept exchange from its correspondents in lieu of cash, and to deposit in its bank to the credit of appellees as cash the amount of the exchange so received, and therefore appellant is in no position to complain of the judgment rendered even though the court's charge to the jury may be erroneous in the particulars of which complaint is made. In reply to this contention it is sufficient to say that the evidence did not conclusively establish the existence of such an agreement, and that, in the absence of such evidence, appellees were not entitled to an instructed verdict, and the errors referred to require a reversal of the case. The trial court did not charge at all upon this phase of the case, and it is proper to say that should such an issue arise upon another trial it ought to be submitted to the jury by a proper instruction.

The judgment of the court below is reversed and the cause remanded to be tried in accordance with the views expressed in this opinion.

*Reversed and remanded.*