## TALLEY v. GULF, C. & S. F. RY. CO. (No. 5470.)

(Court of Civil Appeals of Texas. San Antonio. April 21, 1915. Rehearing Denied May 12, 1915.)

1. APPEAL AND ERROR ☞1071 — REVIEW — HARMLESS ERROR.

The failure of the court, in an action for the negligent firing of a building, to make any finding on the question of negligence, while erroneous, is harmless; there being no evidence of any negligence, and the judgment for defendant being based on other grounds.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. ☞ 1071.]

2. RAILROADS ☞469—FIRES—CONTRACTS.

Where a railroad company built a switch track to plaintiff's premises and leased part of its right of way to plaintiff under agreement that it should not be liable for any loss or damage to any property owned, leased, or controlled by plaintiff, whether arising through the company's negligence, or otherwise, the contract included damage from fires communicated, not only from trains and locomotives on the switch track, but also on the main track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1665; Dec. Dig. ☞469.]

3. RAILROADS ☞469 — FIRES — CONTRACTS — CONSIDERATION.

A railroad company's building of a switch for a shipper at a point where it had no station, and was not bound to establish a switch, was sufficient consideration for an agreement by the shipper that the company should not be liable to him for any fires caused by trains and locomotives on either the switch or the main track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1665; Dec. Dig. ☞469.]

4. RAILROADS ☞484—FIRES—ACTIONS—EVIDENCE.

In a suit against a railroad company for the firing of adjacent property, evidence *held*

insufficient to go to the jury on any theory; the cause of the fire being wholly conjectural.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746; Dec. Dig. ⊜⟿484.]

Appeal from District Court, Montgomery County; J. Llewellyn, Judge.

Action by F. A. Talley against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

C. W. Nugent and C. A. Toler, both of Conroe, Dean, Humphrey & Powell, of Huntsville, and J. T. Rucks, of Conroe, for appellant. Terry, Cavin & Mills, of Galveston, F. J. & C. T. Duff, of Beaumont, and W. N. Foster, of Conroe, for appellee.

FLY, C. J. This suit was instituted by appellant against appellee for damages arising from the destruction by fire of certain lumber and other property belonging to appellant. It was alleged that the depot of appellee was set on fire by sparks from its engines, and that therefrom the property of appellant was ignited and destroyed. Appellee pleaded contributory negligence and alleged that appellant had entered into written contracts with it by which he agreed that appellee should not be held liable for fires communicated to his property. The cause was tried without a jury, and judgment was rendered in favor of appellee.

The contract pleaded by appellee contained the following clause:

"That the first party shall not be held liable for or on account of any loss or damage to the property, buildings, or structures or property therein located, upon any land owned, leased, or controlled by the second party (including the said plant and its contents), whether belonging to the second party or permitted by the second party to be or remain upon said land or any part thereof, or in any building or structure situated thereon, from whatever cause arising, whether through the negligence of the first party, its agents or servants, or any of them, or otherwise, it being understood that all risk of such loss or damage shall be, and it is hereby, assumed by the second party, and that neither the second party nor any one claiming under or through the second party shall make any demand against the first party for or on account of any such loss or damage from any cause whatever, and that the second party will indemnify and forever save and hold harmless the first party from and against any liability, claim, or demand whatsoever for the loss of or injury to any such property, whether such loss or damage arise from fire set out in the use or operation of said spur track or tracks used in connection therewith or from other cause, and whether such loss or injury be caused accidentally or through the negligence or carelessness of the first party, and that in case of loss or damage to any such property the second party shall deliver or cause to be executed and delivered to the first party a full and complete release, satisfaction, and discharge of any and all claims or demands on account thereof."

By "first party" is meant appellee, and "second party" is appellant, and the consideration was the building and operating of a switch or siding known as the "industrial track" adjacent to the mill and lumber yards of appellant, and largely for his benefit. The switch was at or near a small station called Keenan. Appellant admitted executing the contract, but attacked its validity on the ground that there had been a station and switch near his property for years prior to the time the contract was made, for the accommodation of the public, and that appellee was under obligation to provide facilities there for receiving and delivering freight to the public, and that the siding in question was for the general public, as well as for appellant. It was also pleaded that the contract was invalid because it sought to contract against the negligence of the railway company, and that there was no consideration for its execution.

The contract in question was dated March 15, 1907, and on February 27, 1911, appellee leased to appellant its right of way north of its track and adjacent to the property of appellant, and in that lease contract was the following clause:

"That the lessor shall not be responsible for any loss or damage to the buildings or structures at any time upon the demised lands or to buildings or structures adjacent thereto, or to the property of the lessee or others in and upon any such buildings and structures, or any such adjacent buildings or structures, caused by fire, whether from railroad engines or from the buildings of said lessor, or by fires caused in any other way, but that all such loss and damage from whatever source shall be sustained by the lessee alone, and the successors, assigns, lessees, subtenants, licensee patrons, depositors, heirs, executors, and administrators of the lessee, and the lessee hereby agrees to indemnify and save harmless the lessor, its successors and assigns, against any liability, cause of action, claim, or demand which any of its patrons or depositors, or any insurer of the goods of either of them, may hereafter assert or have, arising out of or by reason of any such damage."

[1] The court declined to make any finding as to the negligence of appellee in connection with the fire, but placed his judgment on the ground that appellant had contracted away any claim that he may have had for damages arising from destruction of the property. No reason is offered for the refusal to pass upon the question of negligence, and it should have been done, but we are unable to see how appellant was prejudiced by that failure, as under the evidence the finding as to negligence must necessarily have been in favor of appellee. There was no evidence of negligence that could have formed the basis for a judgment.

[2] The contracts are broad enough in their terms to cover any and all fires communicated to the property of appellant by any act of appellee; the evident intention of the first contract at least being to protect appellee from all damages from fire communicated to appellant's property from the operation of trains, not only on the siding, but on the main track. The construction of the siding was made the occasion to obtain immunity for appellee from damages arising

from the operation of its trains, whether on the siding or on the main line. At the time that the siding was constructed there was no station at the point where it was constructed, but it was at another and different place at no great distance off. There the public was accommodated, and it was at the persistent entreaties of appellant that the new siding was built. It was built primarily for his benefit alone, and practically the whole of the freight business from that point belonged to appellant. Appellee was under no legal obligation to build the new siding adjacent to the property of appellant, and as the inducement to build the siding the contract of immunity was made by appellant. He was so anxious for the siding that he did the grading and furnished the ties for the track, and built the loading dock which the witnesses denominate the "dolly-way." The siding would never have been built except at the persistent instance and request of appellant. The second contract was executed in order to obtain the use of the right of way. There was a valid consideration for the execution of the two contracts. The fact that others used the switch in shipping freight did not destroy or impair the consideration. Appellant obtained all he desired from the siding, and it was largely for his use and benefit.

[3] It is admitted by appellant:

"That if the appellee put in a side track or shipping facility for the appellant at some point where it had no station, and where it was under no legal obligation to furnish shipping facilities for the appellant and for the public, it had the right, under the rule established by the decisions relied on by the appellee, to require as a consideration for the putting in of such facility the agreement on appellant's part exempting it from liability from fire caused by the operation of trains over the facility so put in at the request of the appellant."

As before stated, the contracts do not confine the immunity from damages arising from the operation of trains over the siding alone. The reading of such a provision into the contracts would destroy the whole object and intent of the contracts, which were to protect the railroad company from the operation, starting, and stopping of trains near immense quantities of inflammable matter. The decisions referred to by appellant and cited by appellee do not place any such narrow and contracted construction upon similar contracts as a review of some of them will clearly show.

In the leading Texas case of Railway v. Carter, 95 Tex. 461, 68 S. W. 159, it was held that a similar contract was not a limitation upon the common-law liability of the railroad as a common carrier that the construction of the switch would increase the probability that the railroad company would incur liability for damages from fire and that formed a sufficient consideration. The contract was sustained. The siding was built under very similar circumstances to those under which appellee constructed this siding. If that siding was not at a station when constructed, neither was this. If the station of Keenan was established adjacent to appellant's land at the new switch, so was the station of Barnum established at the new switch in the Carter Case. As in that case, so in this, the switch was built for the promotion of appellant's business, and not in answer to the demands of public business. A switch adequate for all business purposes was already built several hundred yards from where appellant desired to have the switch constructed. The Carter Case has been approved in several cases. Woodward v. Railway, 35 Tex. Civ. App. 14, 79 S. W. 896; Railway v. Owens, 36 Tex. Civ. App. 54, 81 S. W. 62; Wooldridge v. Railway, 38 Tex. Civ. App. 551, 86 S. W. 942; Morgan v. Railway, 50 Tex. Civ. App. 420,.110 S. W. 978. See, also, Hartford Insurance Company v. Railway, 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84; Griswold v. Railway, 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647; Stephens v. Railway, 109 Cal. 86, 41 Pac. 783, 29 L. R. A. 751, 50 Am. St. Rep. 17.

The terms of the contracts include all kinds of property owned or held by appellant, whether on the land leased from appellee or other land. Appellee is exempted from all liability for the damage or destruction of appellant's property of any kind by fire.

[4] Although, as hereinbefore stated, the court refused to pass upon the question of negligence, still, if this court had held the contracts invalid, it would not reverse the judgment in this case. There is a total lack of evidence tending to show that the depot was set on fire by a locomotive belonging to appellee. There was positive evidence that the last train passing the station did not emit any sparks. It was an oil-burning engine, and they are never equipped with spark arresters. In order to hold appellant liable, affirmative proof that the fire was caused by sparks from an engine was necessary. It is true that circumstantial evidence would be sufficient to show such ignition, but the circumstances must be such as to lead to the conclusion that the house was ignited by sparks from the engine, and to exclude every reasonable hypothesis that the fire originated in any other manner. The evidence in this case tends merely to show a possibility that the property was ignited by sparks from an engine. But liability for damages cannot be fixed by proof of a possibility. There must be a reasonable probability, to say the least. The evidence in this case utterly fails to prove that it was reasonably probable that the fire originated from sparks emitted from the engine. There was no proof of emission of sparks near the depot at or about the time the fire occurred. The last locomotive passed nearly three hours before the fire was seen. That locomotive did not emit any sparks at or near the depot. The evidence utterly failed to show that

appellee's engine started the fire. Railway v. Meentzen, 52 Tex. Civ. App. 416, 113 S. W. 1000.

There was no testimony whatever that tended to show spontaneous combustion of coal oil, coal, or other inflammable and combustible materials in the depot, as alleged by appellant. Nor did it appear that an imaginary rat or mouse gnawed at a hypothetical match and set fire to the house. Neither is the allegation that some unknown person threw a lighted cigar or cigarette through the transom and ignited the house, supported by any proof. The allegations show that the pleader had no facts upon which to base the charge as to how the house was burned; for, after detailing a number of theories as to how the fire might have originated, the pleader confesses that the fire arose "from some accidental cause unknown to plaintiff." The evidence left appellant and every one connected with the case in the same state of doubt as to how the fire originated. In the absence of any evidence tending to show that it was reasonably probable that the fire started through the negligence of appellee either by its having a spark-throwing engine, an incendiary rat, or a reckless smoker tossing cigars through the transom, or having latent fires stored in the house that spontaneously burst into flames, there was no proof of negligence, and, no matter what reason was given for the judgment, it is the only one that could be rendered in the premises. No other judgment could be sustained except the one rendered, and under such circumstances, independent of the reasons given for its rendition, it will be affirmed. Fant v. Sullivan, 152 S. W. 515, in which a writ of error was refused by the Supreme Court.

The judgment will be affirmed.