## INDUSTRIAL ACCEPTANCE CORPORATION v. COREY et al.

### No. 1382—5554.

Commission of Appeals of Texas, Section A.

June 25, 1930.

McGown & McGown and L. B. Otey, all of Fort Worth, for plaintiff in error.

McCart, Curtis & McCart and A. B. Curtis, all of Fort Worth, for defendants in error.

HARVEY, P. J.

This suit was brought by the Industrial Acceptance Corporation against E. J. Corey and Robert L. Green to recover on a promissory note executed by Corey to the Carroll-Dillard Company, and to foreclose a chattel mortgage on a certain automobile, executed by Corey to secure the note. Robert L. Green is alleged in the petition to be asserting some sort of claim to the automobile. Corey, a nonresident of the state, was cited by publication, and the court appointed an attorney ad litem to represent him in the suit. The case was tried before the court, without a jury, resulting in a judgment denying recovery against Corey on the note, on account of his being a nonresident, and denying a foreclosure of the chattel mortgage. This judgment was affirmed by the Court of Civil Appeals. 19 S.W.(2d) 365.

The defendant in error, Robert L. Green, duly answered in the suit, setting up claim of ownership of the automobile, at the time it was mortgaged, and claimed that it was mortgaged without his consent. The material facts are as follows:

Some time prior to October 25, 1927, the Carroll-Dillard Company, who conducted a business in Forth Worth for the sale of automobiles at retail, ordered from the factory a number of automobiles. The automobiles, among which was the one in controversy, were shipped by the manufacturer to Forth Worth, under bill of lading, with draft for the purchase price attached. The bill of lading, with the draft attached, was forwarded to a bank in Fort Worth to be delivered to Carroll-Dillard Company on payment of the draft. On October 25, 1927, the automobiles being in transit, the Carroll-Dillard Company induced Green to pay the draft and take up the bill of lading. In the same transaction the Carroll-Dillard Company executed to Green a bill of sale to the automobiles. The auto-

mobiles were turned over to the Carroll-Dillard Company by Green, as his agent, with authority to sell them for cash and pay over the proceeds to him as each sale was made. The Carroll-Dillard Company took possession of the automobiles, as agent for Green, and exposed them for sale, on the floors of its place of business. The automobile in controversy remained in the possession of the Carroll-Dillard Company, exposed for sale on the floors of the place of business of the company, until the latter part of December, 1927, when the company closed its doors on account of insolvency, and Green took personal possession of the automobile and retained possession until this suit was filed. The note sued on by the plaintiff in error is dated November 15, 1927, and is for the sum of $1,108.00, payable to the Carroll-Dillard Company, in monthly installments, and purports to have been executed by Corey for the purchase price of the automobile in controversy.

The chattel mortgage on the automobile bears even date with the note, and purports to have been executed by Corey to secure the note. The mortgage was promptly recorded in the office of the county clerk. The evidence tends to show that the purported sale to Corey was simulated, and that Corey did not really buy the automobile. The trial court expressly found, in effect, that a genuine sale of the automobile to Corey was not made by the Carroll-Dillard Company. The note bears the indorsement of the Carroll-Dillard Company by G. E. Dillard, the president of the company, purporting a transfer of the note to the plaintiff in error. The indorsement bears no date. Corey is the stepfather of G. E. Dillard. The chattel mortgage bears the indorsement of the Carroll-Dillard Company, by Dillard its president, which purports a transfer of the mortgage to the plaintiff in error. This indorsement bears date November 15, 1927, the date of the mortgage and note. Green was ignorant of the transactions reflected by these instruments until about January 28, 1928, when this suit was filed. If anything of value was paid by anybody in these transactions, Green has never received it, and knows nothing of any such payment having been made.

■ By the transaction in which the Carroll-Dillard Company executed the bill of sale to Green, and the latter took up the bill of lading and paid the draft drawn by the manufacturer for the purchase price of the automobiles, Green became the owner of the automobiles. Commercial Credit Co. v. Motor Co. (Tex. Com. App.) 23 S.W.(2d) 702. The company had no authority, as Green's agent, to sell the automobile in controversy, on credit, much less to make a fictitious sale of it on credit for the purpose of taking and negotiating a mortgage on it. If the genuineness of the sale to Corey had not been brought under suspicion, and the Carroll-Dillard Com-

pany adopted the circuitous method it did, merely as the means of obtaining the purchase price in cash, and the company actually received the cash from the plaintiff in error, it would be held, no doubt, that Green would have no right to complain. Jackson v. Means (Tex. Com. App.) 12 S.W.(2d) 167. But such is not the case before us. Unexplained facts are shown in evidence, which justified the trial court in inferring, as it presumably did, that the Carroll-Dillard Company, in pursuing the course it did, was attempting to carry out a scheme to perpetrate a fraud on Green.

■■ The note sued on is a negotiable instrument, and the mortgage in question is incidental to it. Ordinarily, the holder of a negotiable instrument, as indorsee, is presumed to be holder in due course. But when fraud in the inception of the instrument is shown, or circumstances are shown which raise a strong suspicion of fraud, it devolves on such holder to prove that he in fact acquired the instrument for value before maturity. R. S. art. 5935, §§ 55 and 59; Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996; Blum v. Loggins, 53 Tex. 121; Hart v. West, 91 Tex. 187, 42 S. W. 544; 6 Tex. Jur. pp. 994, et seq.; 1 Joyce Defenses to Commercial Paper, § 646. The reason for this rule is that fraud in the inception of the instrument raises a presumption that the party to the fraud, who formerly held the paper and who is precluded from recovery thereon himself, has placed it in the hands of another to sue on for him. 8 C. J. p. 986.

■ In the instant case, there is no proof that the plaintiff in error paid value for the note and mortgage. There is no basis for a presumption as to the good faith of the plaintiff in error, or as to lack of notice of the vicious origin of those instruments. Records from the office of the Carroll-Dillard Company were introduced in evidence by the plaintiff in error. These records are not properly verified. Entries appearing therein purport to show that the Carroll-Dillard Company received from the plaintiff in error the sum of $1,000 for the Corey note a few days after the date of the note. But these entries are not binding evidence, as against Green, since they rest under the same cloud as do the entries which purport to show a genuine sale of the automobile to Corey. In both instances, the entries relate to a transaction shown to be tainted by fraud. They are but ex parte declarations of a participant in the fraudulent transaction.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.