## GENERAL MOTORS ACCEPTANCE CORPORATION v. BETTES et al.

### No. 7788.

Court of Civil Appeals of Texas. Austin.

Jan. 25, 1933.

Rehearing Denied Feb. 22, 1933.

Henry P. Edwards, of Dallas, for appellant.

Woodruff & Holloway and R. E. Lee, all of Brownwood, for appellees.

BAUGH, Justice.

Appeal is from a statutory trial of the right of personal property, consisting of three Pontiac automobiles. Appellees seized them under a distress warrant, asserting a landlord's lien on them for past-due rents owing to appellee Ruth R. Bettes, by L. C. McKean on the building in which the cars were placed and offered for sale. After they had been so seized, appellant filed claimant's oath and bond, retained possession of the cars theretofore obtained, and subsequently sold same. In a trial to the court, judgment was rendered in favor of appellees against appellant for $1,625, the amount of the rents due appellees by McKean, on the ground that appellees had a prior landlord's lien on said cars to secure the rent account.

Appellant's first assignment is that the court erred in holding that it had failed to establish its claim of ownership of the cars. The transactions through which it claimed title to the cars were as follows: On May 27, 1931, McKean doing business at Brownwood, Tex., as the McKean Motor Company, ordered the cars from the Oakland Motor Company factory branch at Dallas. Their purchase was financed by appellant as follows: The cars were shipped from the factory to Brownwood, under a bill of sale to the General Motors Acceptance Corporation and bill of lading with draft attached sent to a Brownwood bank. When the cars arrived, McKean paid draft for $278 and executed his note for $2,375, dated June 22, 1931, due four months after date, and payable to appellant at Dallas, Tex. This note represented the purchase price of the four cars shipped, three of which are here in controversy. McKean at the same time executed and delivered to appellant what is designated a "trust receipt," under which the cars were delivered into McKean's possession, unloaded, and placed by him in the rented building on June 24, where they were offered for sale.

On July 14, 1931, appellant, under the terms of the "trust receipt," which was not placed of record in Brown county, and of which appellees had no notice, took possession of said cars and removed them to Coleman county, where appellees had them seized on the following day under the distress warrant.

Clearly title passed under the bill of sale from the manufacturers into the General Motors Acceptance Corporation. Industrial Acceptance Corp. v. Corey (Tex. Com. App.) 29 S.W.(2d) 978. But appellant delivered the cars to McKean, who placed them in appellees' building and offered them for sale to the public, and McKean executed and delivered to it his promissory negotiable note for the purchase price, together with the "trust receipt."

Appellant contends that the "trust receipt" evidenced merely a consignment or bailment for sale, that appellant retained ownership of the cars while located in appellees' building, and consequently that no lien for rents could attach. Appellees contend that such trust receipt evidenced such a reservation of title as is required by articles 5489 and 5490, R. S. 1925, to be recorded as a chattel mortgage in order to be valid against creditors; and, not having been registered, same was void as against Ruth R. Bettes, a creditor within the purview of the statute, who acquired a landlord's lien on the cars to secure past-due rents.

We have concluded that appellees are correct. While the trust receipt acknowledged that appellant was the owner of the cars and bound McKean to hold them for purposes of storage under further instructions of appellant, and not to sell or incumber same

until after payment by McKean to appellant "of amounts shown on dealer's record of purchase and release, etc.," it also bound him to "pay and discharge all taxes, encumbrances and claims relative thereto." McKean was a dealer in automobiles, selling both new and secondhand cars to the public. The cars were in his possession clearly for purposes of sale to the public, and were offered for that purpose. Appellant had nothing of record to indicate otherwise than that McKean was the owner of same with full power to sell same to the public. Under such circumstances, had he sold one of said cars to a purchaser in good faith for value without notice of appellant's claim, such purchaser would undoubtedly have obtained a good title thereto. Industrial Acceptance Corp. v. Corey, supra. Under such circumstances, and the provisions of the trust receipt, which clearly contemplated a sale of the cars by McKean to the public, and the execution and delivery by McKean to appellant of his negotiable promissory note, binding him without qualification to pay to appellant the full purchase price of the cars delivered to him for purposes of sale, we think the trust receipt must be construed as a mere reservation of title to secure the payment of the note, and clearly within the purview of articles 5489 and 5490 of the statute. Not being recorded it was void as to creditors of McKean without notice thereof. Carrollton Acceptance Co. v. Wharton (Tex. Civ. App.) 22 S.W.(2d) 985; Commercial Credit Co. v. Motor Co. (Tex. Com. App.) 23 S.W.(2d) 702; General Motors Acceptance Corp. v. Boddeker (Tex. Civ. App.) 274 S. W. 1016; Texas Bank & Trust Co. v. Teich (Tex. Civ. App.) 283 S. W. 552; Scruggs v. Crockett Automobile Co. (Tex. Civ. App.) 41 S.W.(2d) 509.

Considered in its general aspects, in the light of the circumstances and of the written instruments executed, we think it is obvious that appellant was merely financing the dealer in his purchase of new cars, that such cars were to be sold by him to the public and the appellant to be repaid by the dealer, out of the proceeds of such sales, the funds advanced by it to him, in carrying on his business. The dealer was consequently clothed with the indicia of ownership, if not with actual title to the cars, and the purposes and import of the note and trust receipt executed by him were merely to evidence and secure the appellant in the sums advanced by it to him to enable him to carry on his business of selling automobiles.

While one of appellant's witnesses testified that it was the custom of appellant, followed in the instant case, to surrender to the dealer the note executed by him, when appellant repossessed the cars, there is nothing either in the trust receipt or in the note itself obligating it to do so. The note was an unconditional negotiable promise to pay the purchase price of the cars. Any collateral

agreement or custom of appellant seeking to vary its express written terms was therefore not admissible. Robertson v. City Nat. Bank, 120 Tex. 226, 36 S.W.(2d) 481; Daggett v. Corn (Tex. Civ. App.) 54 S.W.(2d) 1098.

■ It is well settled that the owner of a rented building is a creditor of his tenant for rents due to him within the purview of the statute, and under article 5238 entitled to a preference lien on the property of the tenant in the building to secure rents due, superior to an elder unrecorded mortgage on the same property. Berkey & Gay Fur. Co. v. Sherman Hotel Co., 81 Tex. 135, 16 S. W. 807; Low v. Troy Laundry Machinery Co. (Tex. Civ. App.) 160 S. W. 136; Cave v. Talley (Tex. Civ. App.) 298 S. W. 912; Carrollton Acceptance Co. v. Wharton, supra.

■ Appellant's second assignment and remaining contention is as follows: "The trial court erred in decreeing the automobiles in controversy were subject to a landlord's lien securing appellees in the payment of rents due them by L. C. McKean which had accrued prior to the placing of said automobiles in the rented premises, and which had accrued under a prior tenancy based upon a written lease which had theretofore expired."

McKean occupied the premises under a written lease covering a period of three years beginning April 10, 1928, at a rental originally of $200 per month. While the ownership of the building changed during that period and the rent was reduced to $125 per month, the tenant completed the term and after April 10, 1931, continued to occupy the premises from month to month under oral agreement at a monthly rental of $125. Of the amount recovered, $1,325 accrued during the last nine months of the three-year period, and $300 under the month to month oral agreement. The automobiles in question. were placed in the rented building in June, 1931, while McKean was occupying the building under his tenancy from month to month.

Appellant's lien being void as to creditors of McKean for lack of registration, its claims were in no wise superior to those of McKean as against the appellees. The query therefore arises, Could McKean have defeated the landlord's statutory lien for rents accruing under said lease, because the cars were placed by him in said building after the expiration of his written lease? The rents accruing and unpaid all fell within a twelve-month period prior to the removal of said cars from the building. Where a written lease expires and the tenant holds over without the execution of a new lease, his occupancy has been held to be under the terms of the expired lease. Woodward v. Ry. Co., 35 Tex. Civ. App. 14, 79 S. W. 896. In any event, however, we think the landlord's lien attached to the property placed in the building in June, 1931, regard-

less of the date of the expiration of the written lease, or whether the holding over by the tenant was under a new rental contract or under the old. To hold that a landlord's lien attaches only to property placed in the building during the term in which the rents become due, in tenancies from month to month, where stocks of merchandise are constantly changing and being replaced with new, would obviously in many instances destroy the landlord's security for past-due rents. Such was not the purpose of the statute. As stated by the Supreme Court in Block, Oppenheimer & Co. v. Latham, 63 Tex. 417, the lien attaches to the property placed upon the rented premises, at any time during the tenant's occupancy thereof "for the payment of all rent due without reference to the time it accrued."

While there may be some language in Hempstead R. E., B. & B. Ass'n v. Cochran, 60 Tex. 620, tending to indicate the contrary, that case was by the Commission of Appeals, and such language was held by the Supreme Court in Marsalis v. Pitman, 68 Tex. 629, 5 S. W. 404, to be merely dicta, and not in accord with the views of the Supreme Court. The other cases cited by appellant relate to farm and crop leases, which are governed by a different statute and present different questions from those presented by this case.

Finding no error in the record, the judgment of the trial court will be affirmed.

Affirmed.