## EASTERN STATES PETROLEUM CO. et al. v. PORT TERMINAL R. ASS'N et al.

### No. 11323.

Court of Civil Appeals of Texas. Galveston.
March 26, 1942.

Austin Y. Bryan, Jr., of Houston (Bryan & Bryan, of Houston, of counsel), for appellants.

James W. Mehaffy and Tom M. Davis, both of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellees.

MONTEITH, Chief Justice.

This suit was brought by appellants, Eastern States Petroleum Company and certain insurance companies, to recover damages arising from the destruction by fire of property belonging to Eastern States Petroleum Company and insured by appellants, Insurance Companies, located adjacent to a spur track on its premises. The fire was alleged to have been caused by specific acts of negligence on the part of the employees of appellee Association.

Appellee answered defensively and by way of cross-action. The primary defense asserted was that the Association was absolved from any responsibility for loss resulting from the negligence of its employees by the express terms of a certain switch track contract executed by appellant, Eastern States Petroleum Company's predecessor in title.

By agreement during the trial, the case was withdrawn from the jury and submitted to the court, who held that the agreement upon which appellee Association relied was valid, and rendered judgment in its favor.

The agreement in question was entered into between the Galveston, Harrisburg & San Antonio Railway Company and the Deepwater Oil Refineries on August 27, 1920. By lease agreement, Eastern States Petroleum Company became the successor in interest of Deepwater Oil Refineries and Port Terminal Railroad Association became the successor in interest of Galveston, Harrisburg & San Antonio Railway Company. The agreement provided that a spur track should be constructed by the railroad, a portion to be owned by the industry and a portion to

be owned by the railroad, and that the cost of construction should be shared by the parties. It contained an indemnification clause, a provision that the industry should bear the risk of damage to all cars spotted on the spur track unless said cars were negligently destroyed by the railroad, and a provision that the railroad should have the right to use the spur track for other purposes if such use did not interfere with the industry's use thereof. The public was given no right to use the track.

That portion of the agreement, Paragraph Sixth, upon which appellee Association relies, relates to the release of the railroad from liability for damage by fire to property in the vicinity of the spur track. It reads as follows: "It is agreed that in consideration of the convenient facilities afforded by, and the benefits inuring to the second party from the construction of said track, that the first party is hereby released from all liability on account of any loss or damage by fire to the property of the second party, or any other person, which may be in the care, custody, or control of the second party, in any car thereon, or to any building now or hereafter erected adjacent to same, or property stacked or stored near the same, whether such damage be occasioned by sparks from the locomotives, negligence, or otherwise."

It was stipulated by the parties that said agreement was in full force and effect and binding on all parties at all times material to this suit.

Appellant contends, (1) that the agreement of August 27, 1920, was void as being against the public policy of the state; (2) that it was ambiguous, vague and uncertain in its terms; and (3) that the employees of appellee Association were guilty of such gross negligence as to require the rendition of a judgment in favor of appellants, notwithstanding the contract of August 27, 1920.

It is the established law of this state that railroads, as common carriers, owe certain duties and obligations to the public, and that, while discharging these duties, they are in a different category from other corporations and are not permitted to vary their well defined obligations by contract. It is, however, equally well settled that a railroad, when not contracting in its character as a common carrier, has the same liberty of contract as have other persons.

The leading case in this state relating to the right of a railroad company, when not contracting in its character as a common carrier, to contract as other corporations or persons, is the case of Missouri, Kansas & Texas Railway Company of Texas v. Carter, 95 Tex. 461, 68 S.W. 159, 164. The facts in that case are similar in all material respects to those in the instant case.

In the Carter case the exculpatory clause was contained, as in this case, in a spur track agreement. The lumber yards and sheds of the plaintiff Lumber Company were destroyed by fire communicated by one of the railroad's locomotives. Neither the track nor the property destroyed by fire was located on the railroad right of way. The agreement for the construction of the spur track read: "Now, therefore, in consideration of the premises, and of the construction of the said side track and switch by the said railroad company, I, the owner of the said mill, hereby release the said Trinity & Sabine Railway Company * * * from all damages resulting from the injury or destruction of any property whatever that may be injured or destroyed by fire or sparks from any locomotive of said railroad company at or about said Barnum switch, belonging to me, my employés or contractors in and about the said mill. * * *"

From a judgment for plaintiff, an appeal was taken to this court, which certified certain questions to the Supreme Court, one of which was: "Was the contract of release void, either as against public policy or for want of consideration?"

The Supreme Court made the following answer to that question: "The contract is not void as being against public policy of the state, nor for want of a sufficient consideration."

In its opinion the Supreme Court pointed out that the paramount public policy of the state was to give all contracts which were made by persons of full age and competent understanding the meaning which the parties ascribed to them, and to enforce such contracts. In this connection the court, in its opinion, said: "The power to make contracts is too valuable a right to be lightly swept away under the general declaration that such contracts are contrary to public policy, and we must come to some definite point of understanding what the public policy offended against consists of."

The court pointed out that there is no general rule of public policy which forbade persons to make contracts by which one would be exempted from or indemnified against the consequences of his own negligence, and that a railroad company, when not contracting in its character as common carrier, has the same right to contract as other corporations or persons. In holding that the limitation of liability provisions did not contravene public policy, the court used the following language:

"This public policy of the state relates to conditions which arise out of the construction and operation of a railroad, and out of the pursuits of business in its vicinity; but the parties in this case established by their contract a switch where none was required by the existing conditions of business, or for the public use, and it was established solely for the promotion of the private interests of the appellees, to develop at that place a business out of which would arise increased risks to the railroad company in the operation of its locomotives.

"By the terms of the contract, the exemption from liability is limited to such property as might belong to appellees, situated at and about the switch, for which the railroad company was not responsible as a common carrier. The contract does not provide that the railroad company may relax its diligence in the equipment of its locomotives, nor does it exempt the railroad company from liability for damages occasioned to the property of others at and about the switch; but the same diligence in equipping the locomotives, and the same care in operating them, was required, as to property of all other people, as would have been if the exemption had not existed * * *.

"We conclude that the contract certified is not violative of the public policy of the state, but is a legitimate exercise of the liberty of contract, by which the appellees voluntarily, and for the purpose of securing the convenience of the railroad at that point, agreed to release the railroad company from liability for injury which might occur to their property by the negligence of the employés of the railroad, or by such unavoidable accident as is frequent by the escape of fire from the best equipped machinery."

In the case of Walling v. Houston & T. C. R. R. Co., Tex.Civ.App., 195 S.W. 232, writ of error refused, a similar clause in a lease contract was upheld.

In the case of Talley v. G., C. & S. F. Ry. Co., Tex.Civ.App., 176 S.W. 65, writ of error refused, the railroad built a switch to the plaintiff's property and later leased to plaintiff a portion of the right of way. Both the lease agreement and the spur track agreement contained a provision that the railroad would not be held liable on account of any loss or damage to the property, building, or structures upon any land owned, leased, or controlled by the plaintiff. Appellant admitted executing the contracts but attacked their validity on the ground that prior to execution thereof there had been a station and a switch near his property, and that the railroad was under obligations to provide facilities for receiving and delivering freight to the public. In an action brought by plaintiff to recover damages caused by fire communicated to its premises by fire originating in the railroad depot, caused by sparks from a locomotive, the court sustained the provision of the contract exempting the railroad from liability therefor.

The court in its opinion held that the new siding was built for the appellant's benefit, that the railroad was under no legal obligations to build a new siding adjacent to the property of appellant, and that the contract of immunity was made by appellant as an inducement to build the siding.

The rule above stated, established by the Texas courts, is supported by the following authorities from other jurisdictions: Davis v. A. F. Gossett & Son, 30 Ga.App. 576, 118 S.E. 773, affirmed 158 Ga. 886, 124 S.E. 529; Thirlwell v. Payne, 1921, 108 Kan. 700, 196 P. 1068; Porter v. New York, N. H. & H. R. R. Co., 1910, 205 Mass. 590, 91 N.E. 875; New York Central R. R. Co. v. William Culkeen & Sons, 1924, 249 Mass. 71, 144 N.E. 96; Mann v. Pere Marquette R. R. Co., 1903, 135 Mich. 210, 97 N.W. 721; Mayfield v. Southern Ry. Co., 1910, 85 S.C. 165, 67 S.E. 132.

■ The spur track, which was the subject of the agreement in the instant case, was not constructed for the use of the public; it was not upon the railroad's right of way, and the railroad was under no duty to construct it or to maintain it for the use of the public after it was constructed; it was not available for the public for transportation, but was originally

542

constructed for the benefit of appellant's predecessor in interest alone, and it is to be presumed, in the absence of a showing in the record to the contrary, that it has been maintained at all times since for the convenience of appellant, Eastern States Petroleum Company, and its predecessors in interest, in receiving and shipping goods in the course of its business. In entering into this agreement appellee's predecessor in interest was not contracting as a common carrier, but merely as a private corporation. There was no requirement either statutory or otherwise compelling it to extend a spur track to serve appellant's predecessor, or to run its locomotives and cars over the track for the convenience of appellant after it was constructed. It could have refused to build the spur and could have required the industry to deliver and receive goods at regularly designated public depots, removed from the danger of fire. Instead of doing this, it agreed to build the spur if the industry would bear all the risk of loss occasioned by fire resulting from the operation of locomotives near inflammable substances. This was a legitimate condition by the railroad, acting as a private individual, and was not violative of the public policy of the state.

■ Appellants contend that the language of certain paragraphs of the agreement is conflicting and uncertain to such an extent as to render it void. This contention cannot be sustained.

While a cursory inspection of the paragraphs in question indicates the possibility of a conflict, we are convinced, after a careful reading of the entire instrument, that the indicated conflict can be reasonably and logically reconciled when it is considered that those parts of the agreement which are alleged to be in conflict relate to the risk of damage to and destruction of different classes of property under different ownerships.

■ We cannot sustain appellants' contention that the undisputed evidence developed in the record establishes such willful and wanton negligence on the part of the appellee Association's switch crew as to require a judgment in favor of appellant. Appellant not only does not allege that appellee's servants were guilty of gross negligence, but, the trial court having rendered judgment in favor of appellee, it must be conclusively presumed in support thereof that he found that the employees of appellee were not guilty of gross negligence on the occasion in question.

It follows from above conclusions that the judgment of the trial court must be in all things affirmed.

Affirmed.