Dennis v. State, 74 S. W. 559; Butler v. State, 46 Tex. Cr. R. 289, 81 S. W. 743; Jackson v. State, 60 Tex. Cr. R. 273, 131 S. W. 1076.

The judgment is ordered affirmed.

---

LOVELADY et al. v. HARDING et al.
(No. 8912.)

(Court of Civil Appeals of Texas. Ft. Worth.
Nov. 2, 1918.)

1. LANDLORD AND TENANT ⬚230(8)—ACTION FOR RENT—VARIANCE.

The petition, in action for rent, alleging written lease of second and third floors of building, lease offered in evidence in terms of second floor, is subject to objection of fatal variance.

2. PLEADING ⬚376—NECESSITY OF PROOF—ADMISSION IN PLEA.

Plaintiff must prove the lease as alleged in petition, notwithstanding special pleas in answer admitting it, they following and being subordinate to a general denial of allegations of petition, coupled with demand for strict proof.

3. FRAUDS, STATUTE OF ⬚158(4)—PAROL EVIDENCE—VARYING LEASE.

In view of statute of frauds as to lease for more than a year, parol evidence that written lease in terms of second floor, was intended to also cover third floor, is unavailing.

4. LANDLORD AND TENANT ⬚230(8)—ACTION FOR RENT—VARIANCE.

There is no fatal variance between lease executed by husbands alone, and petition of husbands and wives for rent, expressly alleging it was so executed, coupled with allegation that it was executed on behalf of all the plaintiffs.

5. LANDLORD AND TENANT ⬚61—ESTOPPEL OF TENANT.

Lessee is estopped to deny lessors' title, though the proofs show the property belonged to the lessors' wives.

6. REFORMATION OF INSTRUMENTS ⬚44—MUTUAL MISTAKE—NUMBER OF LEASED BUILDING—EVIDENCE.

To show mutual mistake, claimed by lessor, for reformation of lease describing leased building as No. 10, evidence that the building occupied by lessee under the lease was No. 11 is admissible.

7. LANDLORD AND TENANT ⬚231(2) — CHANGE OF TENANT—EVIDENCE.

To meet plea and testimony of lessee, sued for rent, that there was an agreement acted on, that another should be substituted in her place as tenant, lessors' agent for collection of rents could testify that he made no such agreement.

8. LANDLORD AND TENANT ⬚200(1)—SUBSTITUTION OF TENANT—RE-ENTRY OF ORIGINAL—RATE OF RENT.

If written lease was abrogated by agreement substituting another as tenant, then for any part of the term that the original lessee occupied under re-entry, after the substituted tenant vacated, the measure of recovery is not the rent stipulated in lease, but the reasonable rental value, in the absence of another contract fixing rent for such period.

9. APPEAL AND ERROR ⬚742(1) — ASSIGNMENTS OF ERROR—STATEMENTS.

Assignment of error will not be considered, statement following it being foreign to it.

10. RELEASE ⬚52—AGREEMENT FOR—MUTUAL MISTAKE—PLEA.

A plea, whereby defendant sought to avoid an agreement for release, alleging that she executed it with a certain understanding and under a certain belief as to its legal import, is insufficient as a plea of mutual mistake.

11. RELEASE ⬚52—AGREEMENT FOR—FRAUD—PLEA.

A plea whereby defendant sought to avoid an instrument executed by her and a company, alleging that she was induced to sign by contemporaneous oral agreement of company's agent that in consideration therefor the company would do certain things, and that she executed it with the understanding and under the belief that such was its legal import, and that she was not indebted to the company in the amount named in it, is insufficient as a plea of fraud.

12. EVIDENCE ⬚443(3)—PAROL AGREEMENT—CONSIDERATION.

The indebtedness mentioned in an instrument, executed by defendant and a company, which the company agreed to satisfy on payment of a certain sum by defendant, not being definitely stated, and the instrument contemplating that a pending suit, in which the company and another asserted claims against defendant, should be dismissed, she, so pleading, could testify that the company's agent, who procured her signature, agreed as consideration that the company would satisfy all claims asserted against her in the suit.

13. TRIAL ⬚194(8) — INSTRUCTIONS — DISREGARDING TESTIMONY.

The court in its charge could not assume as untrue proof sufficient to support allegations as to actual application of payments.

14. LANDLORD AND TENANT ⬚254(2)—LIEN—WAIVER—SUING OUT WRITS.

Plaintiffs do not waive a landlord's lien by suing out a writ of sequestration and distress warrant, though the writs are levied on part of the property on which the lien is claimed.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by R. E. Harding and others against Maud Lovelady and others, with cross-action by defendant Fakes & Co. From adverse judgment the named defendants appeal. Reversed and remanded.

McLean, Scott & McLean, L. M. Levy, M. H. Brown, and Chas. T. Rowland, all of Ft. Worth, for appellants.

---

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ross, Ross & Alexander, W. F. Young, M. L. Massingill, and Glover C. Johnson, all of Ft. Worth, for appellees.

DUNKLIN, J. R. E. Harding and C. T. Burns executed a lease for a period of 42 months to Maud Lovelady on a portion of a building situated in the city of Ft. Worth, which was the separate property of Mrs. Merle R. Harding, wife of R. E. Harding, and Mrs. Ella R. Burns, wife of C. T. Burns. The property was used by the lessee as a hotel and rooming house.

This suit was instituted by R. E. Harding and wife and C. T. Burns and wife to recover a balance alleged to be due as rents for the period of time covered by the lease and for 10 months after the termination of that period. It was alleged in plaintiffs' petition that by the terms of the lease, which was in writing, a lien was created upon all property which the lessee might place in the leased premises, and plaintiffs prayed for a foreclosure of that lien, and also the statutory landlord's lien upon certain articles of furniture which the lessee had used in conducting a hotel and rooming house.

It was further alleged that Mrs. J. A. Naylor had, by written instrument and for a valuable consideration, agreed to pay and guaranteed the payment of $350 of the rents accruing under said lease, and she was made a party defendant in order to recover of her that sum with interest thereon. It was further alleged that Fakes & Co. and the Ft. Worth Warehouse & Transfer Company, both private corporations, had wrongfully converted to their own use the furniture upon which plaintiffs claimed a lien for the rents alleged to be due, and those two corporations were likewise made defendants, and judgment was sought against them for the value of the property so alleged to have been converted.

Fakes & Co. filed a cross-action, in which it sought judgments over against Maud Lovelady and also Mrs. J. A. Naylor for the purchase price of some of the furniture which had been placed in the leased premises, and also for foreclosure of a chattel mortgage given to secure the payment of the same.

After the institution of the suit plaintiffs sued out a writ of sequestration, which was levied upon certain articles of furniture; but later the same was replevied by Maud Lovelady by giving a statutory replevy bond with sureties thereon. Plaintiffs recovered judgment against Maud Lovelady for the balance of the rents claimed in their petition, also for foreclosure of the lien alleged to secure the same, said foreclosure being against all of the defendants, and the lien being decreed as superior to the chattel mortgage lien claimed by Fakes & Co. upon the same property. In the judgment it was recited that the property so replevied by Maud Lovelady had since been disposed of by her, and that she was unable to return the same to

the officer who levied the writ of sequestration, and accordingly a personal judgment was rendered in plaintiffs' favor against the sureties on the replevy bond for the value of the property so replevied, but no personal judgment was rendered in plaintiffs' favor against Fakes & Co. or the Ft. Worth Warehouse & Transfer Company.

Judgment was also rendered in favor of Fakes & Co. against Maud Lovelady for the sum of indebtedness it claimed she owed, and for a foreclosure of its mortgage lien against the furniture, upon which plaintiffs were given a foreclosure, but subject to plaintiffs' lien, which was decreed to be a prior and superior lien. Fakes & Co. also recovered a personal judgment against Mrs. J. A. Naylor for the amount shown to be due upon promissory notes executed by her in favor of Fakes & Co.

From the judgment so rendered Maud Lovelady and Fakes & Co. have appealed.

[1] In plaintiffs' petition it was alleged that the lease contract executed by Maude Lovelady was in writing, and by its terms plaintiffs—

"demised and leased to said defendant Maud Lovelady property located in precinct No. 1, Tarrant county, Texas, and known and described as the second and third floors of the building known as 1007½ Houston street, in the city of Ft. Worth, Tarrant county, Texas, the ground floor of which was at the time and is now occupied by the Wm. Henry Hwd. Co."

Upon the trial plaintiffs introduced in evidence a lease describing the leased premises as follows:

"Being 2nd floor of building of which ground floor is now occupied by the Wm. Henry Hwd. Co., better known as 1107½ Houston street."

Defendant Maud Lovelady objected to the introduction of the lease on the ground that it was a different instrument from that alleged in plaintiffs' petition, and that the variance was fatal. In overruling that objection we think the court erred.

It will be observed that the written lease was to the second floor only of the building, while the pleading of the plaintiffs alleged it to cover the second and third floors, and this discrepancy, we think, constituted a fatal variance, even though it should be said, but which we do not feel called upon to decide, that the designation of the premises in the pleadings and the lease as being a building, the ground floor of which was occupied by the "Wm. Henry Hwd. Co.," would be sufficient to render unimportant the further variance in the description of the building in the lease as 1107½ instead of 1007½ Houston street.

[2] Appellees insist that it was unnecessary to introduce proof of the lease, in view of the fact that the answer of Maud Lovelady contained special pleas in which she admitted the execution by plaintiffs R. E. Harding and

C. T. Burns as lessors, and herself as lessee, of a lease of the property described in plaintiffs' petition, upon the terms and for the length of time therein alleged, and for that reason the assignment of error now under discussion should be overruled.

While the answer of Maud Lovelady did contain such special pleas, nevertheless those pleas followed and were subordinate to a plea containing a general denial of all the allegations contained in plaintiffs' petition, coupled with a demand for strict proof of such allegations.

In Bauman v. Chambers, 91 Tex. 111, 41 S. W. 472, our Supreme Court used the following language:

"When a fact alleged in the petition is denied, either generally or specially, by the defendant in his answer, the plaintiff must prove it, although the defendant may, in another plea, aver the same fact. We have so held at the present term of this court. Silliman v. Gano, 90 Tex. 637 [39 S. W. 559, 40 S. W. 391]."

As said in substance in that decision, to hold otherwise would virtually destroy the right given by our statutes to file inconsistent pleas, if they are filed in the due order of pleading.

[3] By reason of our statute of frauds, it was necessary to the validity of the lease of the property for a longer period than one year that it be in writing. As noted, the lease introduced in evidence was for one story only of the building, while the lease alleged was for two stories, and all the parol proof showed that the lease was intended and understood to cover the third floor of the building as well as the second floor. But such parol proof was unavailing in view of the statute of frauds, and there was no written evidence whatever to show that the third floor was leased. Nor was there any allegation in plaintiffs' pleadings of mutual mistake in the drafting of the lease nor any attempt to reform it.

[4, 5] There is no merit in the contention that there was a further fatal variance in that the lease was executed by R. E. Harding and C. T. Burns alone, without being joined therein by their wives, who owned the property in their separate rights, since in plaintiffs' petition it was expressly alleged that the lease was so executed, coupled with the further allegation that the same was executed in behalf of all the plaintiffs. Furthermore, the lessee was estopped to deny the title of her landlords named in the written lease under which she occupied the premises; and for this reason we overrule another assignment in which complaint is made of the refusal of Maud Lovelady's request for an instructed verdict in her favor, because the proof showed that the property leased was the separate property of Mrs. Harding and Mrs. Burns, who did not execute the lease jointly with their husbands. Standley v. Currey, 161 S. W. 416; Juneman v. Franklin, 67 Tex. 411, 3 S. W. 562.

[6] With respect to two other assignments, in which complaint is made of proof admitted to identify the building, we suggest that upon another trial, if there is a proper plea of mutual mistake of the parties in the written lease in describing the property as No. 1107½ instead of No. 1007½ Houston street, then we believe that testimony to show that the latter number was the number of the building that was occupied by the lessee under the lease would be admissible as tending to sustain such a plea.

[7] There was no error in permitting the witness Taylor, who was agent for plaintiffs in the collection of the rents, to testify that he never made any agreement with Miss Lovelady or Mrs. Naylor that the latter should be substituted as tenant in the place and stead of the former, in view of the plea and testimony of Miss Lovelady, in effect, that there was such an agreement, and that in accordance therewith Miss Lovelady vacated the premises, which were thereafter occupied by Mrs. Naylor for several months, and that during such occupancy plaintiffs looked to Mrs. Naylor alone as the tenant, and the rents were paid by her as such.

[8] In connection with that plea of substitution of Mrs. Naylor as tenant, and the resulting release of Miss Lovelady from her rental contract, the latter further pleaded that, after Mrs. Naylor had occupied the premises for a few months, she, too, vacated the premises, and Miss Lovelady then re-entered the same, and thereafter occupied the property as a tenant, not under the original lease contract, but under an implied contract to pay the reasonable value of the rental, and not under any contract to pay any fixed sum. Some testimony was introduced tending to support those allegations, after the introduction of which Miss Lovelady offered testimony tending to show that the reasonable rental value of the premises during her second occupancy was less than the amount stipulated in the written lease, but upon objection by plaintiffs, this proffered evidence was excluded. This ruling, we think, was error, since, if the written contract was abrogated before the termination of the rental period stipulated therein, then, in the absence of another contract fixing the amount of rents for the time Miss Lovelady occupied the premises after Mrs. Naylor vacated them, the measure of plaintiffs' recovery for that period clearly would be the reasonable rental value of the property; but such proof would not be admissible to reduce the rents stipulated in the lease accruing prior to the alleged occupancy by Mrs. Naylor, if such lease was legally effective.

[9] The respective statements following the sixth and seventh assignments of error in the brief of Miss Lovelady are entirely foreign

to those assignments, which therefore will not be considered.

[10-12] Fakes & Co. sought a recovery of Miss Lovelady for $625, with interest, upon the following written instrument, which was introduced in evidence:

"October 30, 1916.

"Miss Maud Lovelady, Fort Worth, Texas:

"Dear Madam: Upon receipt of your check for $625, and the return of the Victrola, Buck Range, all records, and six carpets, we will give you a receipt in full of all indebtedness. This, of course, includes the goods delivered to our warehouse off of the Interurban. Dismissal of suit now pending.      Yours very truly,

"Fakes & Company,

"F. A. Martin, Mgr.

"Accepted:

"Fakes & Company.

"F. A. Martin.

"Maud Lovelady."

Miss Lovelady sought to avoid the instrument by a special plea to the effect that she was induced to sign it by reason of an alleged contemporaneous parol agreement of the agent of Fakes & Co. that in consideration therefor said company would pay off and discharge all the claims against her in this suit by all parties, and that she executed the instrument with that understanding, and under the belief that such was the legal import of the instrument, and that she was not then indebted to Fakes & Co. in the amount named in the instrument. Upon the trial she offered to testify substantially to the facts so pleaded, but upon objection of plaintiffs such testimony was excluded by the court, although the ground of the objection was not stated. Furthermore, the objection was addressed to the testimony as a whole. The special plea mentioned was wholly insufficient as a plea of mutual mistake or fraud inducing the execution of the instrument, and none of the testimony excluded was admissible upon that theory, which is the theory upon which appellant now insists that it was admissible. But in view of another trial we deem it proper to say that, in view of the fact that the indebtedness mentioned in the instrument therein which Fakes & Co. agreed to discharge upon payment of the $625 is not definitely stated, and in view of the further fact that the instrument also contemplated the dismissal of the present suit which was then pending, we think it would be permissible for Miss Lovelady to testify that the agent of Fakes & Co. who procured her signature to the instrument agreed as a consideration therefor that said company would satisfy all claims asserted against Miss Lovelady in this suit:

· The alleged lease contract by its terms expired July 7, 1915, and according to allegations in plaintiffs' petition Miss Lovelady paid all the rents accruing thereunder up to November 14, 1914, but still owes a balance for the remainder of the term covered by the lease, aggregating $350, and she also owes a balance aggregating $575 for the period of ten months during which she held the property after the expiration of the period fixed by the lease, and in that connection it is alleged that she made partial payments of rents during that period, aggregating $675. Plaintiffs alleged that, by virtue of the fact that Miss Lovelady held the premises over after the expiration of the lease, she was obligated to pay rents at the rate per month stipulated in the lease, thereby invoking the rule announced in Woodward v. F. W. & D. C. Ry. Co., 35 Tex. Civ. App. 14, 79 S. W. 896, and authorities there cited. They also alleged and sought to foreclose the statutory landlord's lien for the rents accruing during the period following that covered by the lease.

Fakes & Co. claimed a chattel mortgage lien upon some of the furniture situated in the building, which the proof shows was dated April 6, 1914, and was filed for record on the following day. And said company now insists that the payments made after the termination of the lease should be by the court applied, first, to the liquidation of the balance due upon the written lease, and then to the satisfaction of the rents accruing from month to month during the hold-over period. This contention is based upon the further contention that there was never any application made of these payments to any particular demands, and therefore the court should apply them to the satisfaction of the debts in the order named. And upon the assumption of the correctness of those contentions complaint is now made of the refusal of said company's request for an instructed verdict to the effect that its chattel mortgage pleaded was a superior lien to plaintiffs' contract lien stipulated in the written lease, as well as their alleged liens for rents accruing during the hold-over period, thus invoking the rule announced in such cases as H. R. E. B. & B. Ass'n v. Cochran, 60 Tex. 620.

[13] In answer to all assignments presenting this contention, it is sufficient to say that the proof was sufficient to support the allegations by plaintiffs that the payments of rents mentioned were applied by plaintiffs exactly as pleaded, and the trial court could not in his charge assume that such proof was untrue.

[14] Said appellant further insists that plaintiffs waived their cause of action against it by reason of the fact that they sued out a writ of sequestration and also a distress warrant, each of which writs was levied upon a part of the property upon which they claimed a lien and sought a foreclosure thereof. We fail to perceive how the lien was waived by the steps so taken, even though it could be further said that plaintiffs could not claim damages for a conversion of the property so impounded by the levy of such writs.

For the reasons indicated the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.