**DOWNWIND AVIATION, INC., Appellant,**

v.

**ORANGE COUNTY, Appellee.**

**No. 09–87–182 CV.**

Court of Appeals of Texas, Beaumont.

Oct. 21, 1988.

Rehearing Denied Nov. 9, 1988.

David K. Anderson, Caddell & Conwell, Houston, for appellant.

Larry C. Hunter, Vidor, for appellee.

## OPINION

BROOKSHIRE, Justice.

The County of Orange instituted these proceedings against Downwind Aviation, Inc., to recover rental payments alleging that Downwind had failed to abide by a written lease agreement. Orange County alleged that Downwind remained in possession of the leased premises after the lease had expired under its own terms. The county sued to recover the rentals for the holdover period.

Before the trial on the merits, the district judge struck Downwind's pleadings for repeatedly failing to follow ordered discovery procedures. The county asked for relief, among other matters, under the declaratory judgment act, *TEX.REV.CIV.STAT. ANN. art. 2524-1* et seq. (Vernon 1965), pleading for a construction of the written lease agreement and asking for a declaration, in its original petition, that such lease agreement was terminated. The original petition was filed in October of 1982. The county alleged that the term of the lease ended on August 31, 1982. The county also pleaded that at a regularly scheduled meeting of the Commissioners Court, on September 13, 1982, a written proposal was presented by the county to Downwind which set forth terms and conditions to be included in any renewed written lease, since the lease provided that the landlord and tenant agreed to submit terms and conditions proposed for a negotiation of a subsequent written lease. Downwind advised that it would not negotiate any further. The Commissioners Court voted to terminate the lease agreement and Downwind was instructed to vacate the premises on or before October 1, 1982. The county, in its first original petition, pleaded for compensation based on the reasonable rental value of the leased premises from September 1, 1982, until such time as Downwind vacated the leased premises. In addition thereto, Orange County prayed to receive such other damages as it may be entitled to.

A basic complaint by the Appellant is that Downwind's pleadings were struck. Later, Downwind amended its answers. The trial court declined to reinstate Downwind's pleadings. At the trial on the merits, Downwind was not permitted to present evidence. This, Downwind argues, was an abuse of discretion. Also, that striking its pleadings was an abuse of discretion. Another basic gravamen of Downwind's appeal is that Downwind contends that the rent for each month was to have been based on Downwind's sales and receipts for that month. The sales and receipts clause of the lease was to govern during the months of a holdover period. However, the trial judge awarded damages based on the fair rental value of the leased premises during the holdover period, this being the measure of damages originally pleaded.

On the other hand, the county argues that the judgment of the trial court should be affirmed but should be greatly increased to order Downwind to pay fines and sanctions that had been previously imposed by the trial court. The trial on the merits was to the bench. A substantial daily monetary fine or sanction had been accumulating beginning in July of 1985. Those fines and sanctions had been imposed by a local district judge. The trial on the merits to the bench was presided over by a visiting district judge.

The reasonable rental value, as the measure of recovery, was clearly set forth in the plaintiff's original petition for a declaratory judgment. Downwind had notice of that theory of recovery or damages.

The County of Orange filed a reasonable set of interrogatories, addressed to Downwind, in October, 1983. These interrogatories were posed in an effort to make reasonable, necessary discovery in the case in accordance with the terms of the lease as

now contended by Downwind on appeal. Downwind failed to answer.

Then, in the middle part of December, 1983, a motion was filed by the county to compel the answers to the previously filed set of interrogatories, pointing out that the answers had not been made and that there were no objections to the interrogatories and that they had not been answered timely. About 5 or 6 months passed and they were still unanswered. The presiding judge of the 163rd Judicial District Court entered an order finding that Downwind had failed to file answers to interrogatories that were submitted by the county and that Downwind had also failed to file any objections to such interrogatories.

The regular presiding judge ordered that the answers to the interrogatories should be made fully by Downwind and that such answers mandatorily should be filed on or before February 9, 1984. In this first order, the court reserved the right to invoke and assess sanctions in the event that the answers were not filed by February 9, 1984. A good deal of time passed and the answers were not forthcoming. A second motion for sanctions was filed in June of 1985. A hearing was set for July 2, 1985, before the regular presiding judge.

It must be borne in mind and stressed that the answers to a fairly simple set of interrogatories *had not been made for a period of over a year.* The answers were to have been filed in February of 1984, but they had not been filed by July 1, 1985. The regular presiding judge had a hearing and specifically found that Downwind had never answered the said interrogatories as ordered, that the information requested was not privileged, and that the information requested was material and essential to the plaintiff's cause of action and that there was no meritorious excuse for the defendant's failure to obey the court's orders.

The order provided, along with reasonable attorney's fees, that Downwind be fined the sum of $100 per day from the date of the order until the date that Downwind filed its correct, complete and proper answers to the plaintiff's interrogatories.

The order involving $100 per day sanction was signed July 15th, 1985. There were some answers filed thereafter but a great majority of them simply stated something to this effect—I do not presently have this information but all these records have previously been furnished to the plaintiff.

In January of 1986, an additional motion for sanctions was filed by the County of Orange stating, in substance, that the county would show the court that the answers of the defendant, Downwind, amounted to no answer at all. On February 26, 1986, a hearing was conducted on the motion for sanctions filed by the county. An order was signed imposing sanctions for the abuse of the discovery process in which the trial court found Downwind Aviation, Inc., in contempt of court for failing to properly answer the interrogatories and that Downwind had 30 days to answer the said interrogatories fully and completely. Downwind was also ordered to produce the records requested or to take affirmative action to produce the records and information by issuing a subpoena requesting the same from any third parties who had the said records in their possession *or to show cause why the trial court should not strike the defendant's pleadings and answers in the pending cause of action.* This order for sanctions was dated March 17, 1986.

There was a plaintiff's third motion for sanctions filed. The attorney for Downwind then made a request of the county and more specifically, the county auditor's office, to attempt to answer the interrogatories by an examination of the Orange County Auditor's records. The attorney of record for *Orange County was agreeable to that request, stating, however, that it was the county's belief that the pump readings involving the gasoline sales were not complete.*

Thereafter, in the *latter part of February, 1987,* a visiting judge, after fully hearing the last amended motion for sanctions of the plaintiff, the County of Orange, ordered that because of the defendant's serious disregard of the orders of the court and its failure to answer said interrogato-

ries (even though Downwind was specifically ordered to do so, both on July 15, 1985, and also on March 16, 1986), that the pleadings of Downwind would be and were thereby stricken. Downwind would not be permitted to present evidence. There was a motion filed to reinstate Downwind's pleadings. Downwind's motion to reinstate its pleadings was denied on May 20, 1987. The plaintiff and defendant announced ready. The jury was waived, the witnesses were sworn and interrogated. The plaintiff and defendant both rested.

■ Under this record, we perceive no abuse of discretion either in regard to any action taken by the regular presiding judge or the visiting judge. Our review of the record reflects strongly and compellingly to us that each of these jurists exercised patience, restraint, even-handedness, and an excellent, exemplary, judicial temperament in view of all the surrounding facts and circumstances in the proceeding. It should be remembered and emphasized that Orange County took the initiative and made an attempt, through the proper discovery procedures, to actually help or assist or at least call to the attention of Downwind the way to calculate the monies owed according to Downwind's contentions.

It was obvious that monies were certainly owed to the county and Orange County tried to properly ascertain these monies and the correct amounts thereof, beginning back in October of 1983.

After a long period of time—up until the middle of July 1985—no answers were made. Downwind then filed answers to only a few of the eleven interrogatories and failed to adequately answer interrogatories 4 through 11. Even after sanctions had been applied and the trial court had ordered that additional sanctions would be applied by the striking of the defendant's pleadings, about 157 days expired before Downwind began to attempt to comply.

When the pleadings were struck, the visiting judge specifically recited that he was proceeding under *TEX.R.CIV.P. 168* and, more especially, *TEX.R.CIV.P. 215*. *See TEX.R.CIV.P. 215(2)(b). TEX.R.CIV.P. 215(1)(a)* provides that in discovery mat-

ters, such as those in this case, an application for an order of sanctions will be made to the court in which the action is pending. This was done. Under *TEX.R.CIV.P. 215(1)(a)* a motion concerning answers to interrogatories submitted under *TEX.R. CIV.P. 168* would be proper. Said rule provides that incomplete answers or evasive answers are to be treated as a failure to answer. Furthermore, under *TEX.R.CIV.P. 215(2)(b)*, the court, after notice and hearing—which were properly done and performed in our case—may make such orders in regard to that failure as are just. The court may strike out the pleadings in whole or in part or may render judgment by default against the disobedient party. *TEX.R.CIV.P. 215(2)(b)(5)*.

We have located correct copies of the rules in effect at the material times involved and we think that then *TEX.R.CIV. P. 215* does affirmatively give this power, right and prerogative to the trial judge to strike pleadings. In view of the whole record, it is totally impossible to say that the experienced, learned visiting judge abused his discretion. Moreover, there is a conclusion of law signed by the visiting judge which reads:

> "The Court's Order Imposing Sanctions for Abuse of Discovery Process signed March 12, 1986, amended the sanctions imposed by the Order Imposing Sanctions for Non–Compliance with Order Compelling Answers to Interrogatories signed July 15, 1985, voiding the $100.00 daily fine."

The above conclusion of law was signed August 4, 1987. We find no abuse of discretion in any action taken by the visiting judge in either striking the pleadings or in failing to reinstate the pleadings or in voiding the $100 per day fine. Voiding the daily $100 fine saved Downwind about $61,-000, according to one method of calculation.

Hence, we overrule points of error numbers one and two, wherein Downwind contended the trial court abused its discretion. It is obvious that the County of Orange, in attempting to obtain correct discovery regarding Downwind's financial records, statements, materials and income tax re-

turns (for the holdover period) was making an effort to enable it, or the trial judge or the trier of facts, to properly calculate the amounts of money due for the holdover period under the written terms of the lease. Since this information was not produced by Downwind, Downwind cannot now complain. Downwind will not be permitted to prevail because of its own failure to follow the proper discovery procedures.

In any event, we have held that there was no abuse of discretion in striking Downwind's pleadings and that there was no abuse of discretion in disallowing the reinstatement of its pleadings. Hence, it was correct for Orange County to proceed on the reasonable rental value of the premises. To hold otherwise would reward Downwind for being a recalcitrant litigant. Under this record and the county's pleadings, we conclude the reasonable rental value of the premises was a correct measure of damages. *Lovelady v. Harding*, 207 S.W. 933 (Tex.Civ.App.—Fort Worth 1918, no writ); *Kubena v. Mikulascik*, 228 S.W. 1105 (Tex.Civ.App.—Galveston 1921, no writ).

A hearing on a Motion for Summary Judgment was held on December 29, 1982. By an order signed February 7, 1983, the court found that a partial summary judgment should be granted and that the lease agreement between the parties dated March 21, 1979, made the basis of this suit, had been legally terminated by the County of Orange and the partial summary judgment further declared that the lease agreement was no longer in effect.

The granting of the partial motion for summary judgment, declaring the termination of the lease, is not attacked by Downwind.

In the Findings of Fact, requested by Downwind, the visiting judge found that the lease expired, according to its terms, on August 31, 1982, and that Downwind continued in possession of the leased premises from September 1, 1982, through February 16, 1983, and that Downwind failed to pay the rent during that holdover period. There was a further finding of fact that Downwind failed and refused to provide to

Orange County information required under the lease, itself, to calculate the rent during the holdover period. A further important, crucial finding of fact was that the reasonable rental value of the leased premises for the holdover period was $11,800.25. These findings of fact were signed and made on July 13, 1987.

Under the findings of fact and separate conclusions of law, signed on July 13, 1987, by the visiting judge, and under the record made in this case, we overrule the Appellant's Point of Error No. 3. We conclude that the findings of fact were, and are, correct under this record and the conclusions of law were, and are, correct and proper pursuant to the findings of fact.

■ Since the lease had been found to have been terminated, the damages resulting from Downwind's holdover have been correctly assessed as the reasonable rental value of the premises during the holdover. *Jones v. Cleaver*, 250 S.W. 251 (Tex.Civ. App.—San Antonio 1923, no writ).

We find, in *Standard Container Corporation v. Dragon Realty*, 683 S.W.2d 45 (Tex.App.—Dallas 1984, n.r.e.), the holding that, in an action for damages for a tenant's or lessee's wrongful holdover under a written lease, the landlord's or lessor's proper measure of damages is the reasonable market rental value of the use of the premises for the time the tenant or lessee held over. *See Kaplan v. Floeter*, 657 S.W.2d 1, 3 (Tex.App.—Houston [1st Dist.] 1983, no writ) and *Whitfield v. Gay*, 253 S.W.2d 54, 56 (Tex.Civ.App.—Eastland 1952, no writ).

■ We overrule the county's counterpoint on appeal asking that we reinstate the $100 per diem fine or sanction entered by the regular district judge. We conclude the visiting judge had the power to modify or set aside the $100 per day fine. The judgment below is affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent to the majority's affirmation of the damages. The trial court held the measure of damages was the

reasonable rental value of the premises during the holdover period and the majority agrees. They are absolutely correct when there is no provision or agreement as to the amount of rent or when the holdover is wrongful. The majority has correctly cited cases for each of these propositions. The majority, however, has cited no case where the reasonable rental value was the proper measure of damages when an agreement provided for the rental amount during the holdover.

This particular lease provided that in the event the tenant remained in possession after the expiration of the lease, then it would be deemed a month-to-month tenancy subject to all the conditions of the lease. Appellant's monthly rental, under the lease was based upon fuel sales and hangar rental receipts plus a percentage of the net annual profit.

The trial judge and the majority attempts to justify their measure of damage standard because of appellant's refusal or inability to furnish financial statements wherein profit could be calculated. This justification perhaps would be proper if appellee had produced evidence of their inability to establish such a figure. There was evidence of the amount of fuel sales and hangar rental receipts for the holdover period. It is not unreasonable, in my opinion, for appellee to have calculated the profit figure based on prior years data and then extrapolated that to the holdover period. It is not unreasonable, in my opinion, for appellee to have consulted an expert in the field of small fixed-base airport operators and offered his opinion of appellant's profit during the holdover period. Yet appellee chose not to proceed in this manner but rather to adopt the reasonable rental standard.

I do not condone the actions of appellant in failing to furnish financial data and concur in the points of error affirming the sanctions imposed. I do not believe, however, these acts alone justify abandoning the agreement as to holdover rents when appellee has not shown an inability to independently calculate those amounts. I would, therefore, reverse and remand for a new trial on the issue of rents due. Because the majority does not, I respectfully dissent.